UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL CASE NO. 23-9-DLB-CJS

R.M., THROUGH HER PARENTS AND NEXT FRIENDS,  PLAINTIFFS
K.M. AND S.M.

v.  **MEMORANDUM OPINION AND ORDER**

BOONE COUNTY PUBLIC SCHOOLS, et al.  DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

This matter is before the Court on Defendants Boone County Schools, Boone County Board of Education, Matthew Turner, and Jodi Hall's Motion for Summary Judgment (Doc. # 51). Plaintiffs having filed their Response (Doc. # 54), and Defendants having filed their Reply (Doc. # 55), this matter is now ripe for review. For the following reasons, Defendants' Motion is **granted.**

## II. FACTUAL AND PROCEDURAL BACKGROUND

This Court previously set forth all relevant facts in the sealed Memorandum Opinion and Order entered in this action on December 26, 2023 (Doc. # 32). The Court restates the pertinent facts below. This case concerns the education of Plaintiff R.M., a student with a disability. (Doc. # 25 at 2). At the time of filing of the Due Process Complaint, R.M. was a six-year-old girl living within the Boone County School District ("District"). (Doc. # 1-3 at 5).[1] R.M. has complex medical conditions including fluctuating

---

[1] The Court primarily relies on the factual findings and record citations within the Final Decision and Order of the ECAB (Doc. # 1-3) and Agency Record (Doc. # 12-2).

1

mild to moderate hearing loss, a cortical visual impairment, paroxysmal tonic upgaze, a chromosomal disorder (microdeletion syndrome), sacral agenesis, and apraxia.  (*Id.* at 5-6).

In 2018, the District conducted an evaluation of R.M. to determine her eligibility for special education programming and identified her as a child with a disability.  (*Id.* at 6).  This finding made R.M. eligible for special education and related services pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  (*See id.* at 6; Doc. # 1 at 2).  As such, she was entitled to a Free Appropriate Public Education ("FAPE"), including special education and related services through the implementation of an individual education plan ("IEP").  To determine the services the District would provide to R.M., school officials and R.M.'s parents would participate in Admissions and Release Committee ("ARC") meetings.

The District and R.M.'s parents participated in multiple ARC meetings over the three years that the District provided R.M. with preschool services.  (Doc. # 1-3 at 6).  The initial 2018 evaluation conducted by the District found that R.M. had very low scores in the areas of communication and adaptive skills, and concluded she had a cognitive score of less than fifty.  (*Id.*).  In February 2019, R.M.'s mother asked the District for a new evaluation given R.M.'s diagnosis of cortical visual impairment and fluctuating hearing loss.  (Doc. # 12-2 at 202).  The ARC re-evaluated R.M. and revised her IEP.  (*Id.*).  The ARC assigned R.M. to New Haven Elementary School where she would have access to a teacher with a background in sign language.  (*Id.*).

In September 2019, the ARC met again and reported that R.M. was using some American Sign Language ("ASL") and could understand what others were signing to her.

2

(Doc. # 1-3 at 6).  However, many of her signs were approximations due to her fine motor challenges.  (*Id.*).  R.M.'s mother requested an increase in speech services, which the District accommodated by modifying R.M.'s speech services schedule.  (*Id.*).

The ARC convened again in March 2020.  (*Id.* at 7).  The District reported that before the schools had closed due to the COVID-19 pandemic, "[R.M.] was observed to have increased peer interaction, speech therapy progress, and ability and stability to walk."  (*Id.*).  The District's speech pathologist suggested to the ARC that R.M. be given access to all communication tools, including available technology and devices.  (*Id.*).  R.M.'s parents opposed this suggestion and voiced a preference for R.M. using ASL.  (*Id.*).  The ARC met again in September 2020.  At this meeting, R.M.'s parents again voiced their preference that R.M. use ASL and expressed concern that it was not currently being utilized enough.  (*Id.*).  They asked that R.M. be placed at St. Rita School for the Deaf, a private school in Cincinnati, Ohio.  (*Id.*).

The ARC met again two months later to review R.M.'s IEP.  (*Id.*).  While District staff noted R.M.'s progress in classroom engagement and expressive communication, R.M.'s mother again stated that she did not want R.M. to use assistive technology.  (*Id.*).  At this meeting, she also expressed concerns about R.M.'s safety.  (*Id.*).  District staff agreed to craft a plan that would address these concerns.  (*Id.*).  Additionally, the Assistant Director of Special Education stated she would review R.M.'s schedule to ensure there would be no safety concerns.  (*Id.* at 8).

In January 2021, R.M.'s parents retained Donna Felts, a parent advocate.  (*Id.*).  Ms. Felts asked psychologist Dr. Basil to conduct an assessment of R.M.  (*Id.*).  Following this assessment, St. Rita informed R.M.'s parents that she could enroll in the Fall of 2021.

3

(*Id.*).  However, St. Rita noted that "because of the variety of services linked in [R.M.'s] IEP, her attending St. Rita will be contingent upon the school district agreeing to place her at St. Rita."  (*Id.*) (citations omitted).  Four ARC meetings totaling more than eleven hours were held thereafter on March 24, 2021; April 7, 2021; April 26, 2021; and May 17, 2021.  (*Id.*).  In April 2021, R.M.'s parents removed her from public school.  (*Id.*).  At their final ARC meeting with the District, the ARC determined that contrary to R.M.'s parents' beliefs, R.M.'s IEP could be implemented in public school and the District could provide her a FAPE.  (*Id.* at 9).

R.M. started kindergarten at St. Rita in Fall 2021.  (*Id.*).  Tuition at St. Rita is $42,000 annually, though it was reduced for R.M.'s parents to $19,000.  (*Id.*).  As of the last day of the initial hearing with the education board, R.M.'s parents had not paid anything to St. Rita.  (*Id.*).  Notably, R.M. does not receive the same level of special education at St. Rita as she did from the District.  Her teacher is not certified as a special education teacher.  (*Id.*).  R.M. does not have classes with nondisabled students.  (*Id.*).  St. Rita does not have a finalized written plan for academic goals for R.M.  (*Id.*).  One of the services R.M.'s IEP calls for is a teacher for the visually impaired, which St. Rita cannot provide.  (*See* Doc. # 12-2 at 211).

On July 15, 2021, R.M.'s parents filed a due process hearing request.  (*Id.*).  A hearing was held on November 17, 19, and December 6-10, 2021.  (*Id.*).  The Hearing Officer issued Findings of Fact, Conclusions of Law and Final Order concluding that Plaintiffs had not met their burden to prove that R.M. was denied a FAPE by the District.  (Doc. # 12-2 at 219).  Subsequently, Plaintiffs filed a Notice of Appeal with the Kentucky Department of Education.  The Education Board affirmed the decision of the Hearing

4

Officer. (Doc. # 1-3 at 23). Plaintiffs appealed the decision of the Education Board to this Court pursuant to 20 U.S.C. § 1415(i)(2). Plaintiffs filed a Motion for Judgment on the administrative appeal (Doc. # 25), which this Court denied, affirming the decision of the ECAB (Docs. # 32 and 33). The Court then entered an Order of Dismissal and Final Judgment (Doc. # 33), which was later amended upon Motion of Plaintiffs (Docs. # 34 and 38). The Amended Judgment reopened the action and clarified that only Counts VII(A) and VII(D) were dismissed with prejudice. (Doc. # 38). Plaintiffs' remaining claims, Counts VII(B) and (C) were returned to the active docket for discovery.

This matter is now before the Court upon Defendants' Motion for Summary Judgment (Doc. # 51). With Plaintiffs having filed their Response (Doc. # 54), and Defendants having filed their Reply (Doc. # 55), the motion is now ripe for review.

## III.   ANALYSIS

### A.   Standard of Review

Defendants move for summary judgment on Plaintiffs' claims. (Doc. # 51). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"The moving party bears the burden of showing the absence of any genuine issues of material fact." *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). The movant may do so by "citing to particular parts or materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the nonmoving party, summary judgment should be granted. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B.  Analysis**

Defendants move for summary judgment on Plaintiffs' remaining claims. (Doc. # 51). Defendants first move for dismissal of claims against Defendants Boone County Board of Education, Matthew Turner, and Jodi Hall, arguing that such claims are duplicative. (*Id*. at 13). Defendants then move for summary judgment on Plaintiffs' remaining claims, Counts VII(B) and (C), arguing that Plaintiffs were not denied due process and that R.M. was not discriminated against. (*Id*. at 14-17). The Court will address each argument in turn.

6

### 1.  Plaintiffs' claims against Defendants Boone County Board of Education, Matthew Turner, and Jodi Hall.

Defendants contend that the claims against Defendants Boone County Board of Education, Matthew Turner, and Jodi Hall "must be dismissed because they are duplicative of the claims against Defendant Boone County Schools." (Doc. # 51 at 13). Specifically, Defendants argue that the official capacity claims against Turner, Superintendent of Boone County Public Schools, and Hall, Director of Special Education at Boone County Public Schools, must be dismissed because Turner and Hall's employer, Boone County Schools, is also a named defendant and therefore the claims are "inherently duplicative because it is effectively suing the entity twice." (*Id*.). Moreover, Defendants argue that the claims against Boone County Board of Education are similarly duplicative and Plaintiffs "[have] not alleged that R.M. was injured by any policy, practice or custom adopted by the Board of Education." (*Id*. at 14). Plaintiffs did not address this issue in their Response.

The Sixth Circuit has made clear that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases); *see also Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992) (a non-moving party's burden to respond to a motion for summary judgment "is really an opportunity to assist the court in understanding the facts. But if the non-moving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered."). For this reason, the Court construes the claims against Defendants Boone County Board of Education, Matthew Turner, and Jodi Hall as abandoned and the claims against them are **dismissed**.

7

### 2. *Plaintiffs' remaining claims.*

Defendant[2] next asserts that it is entitled to summary judgment on Plaintiffs' remaining claims of due process (Count VII(B)) and disability discrimination (Count VII(C)) (Doc. # 51). Defendant argues that Plaintiffs were afforded both procedural and substantive due process and that R.M. was not discriminated against. (*Id*. at 14-17).

#### a. Due process claims (Count VII(B))

The contours of Plaintiffs' due process claim are ill-defined, at best. In their Complaint, Plaintiffs allege that "Defendants actions or inactions have deprived Plaintiffs of their Constitutional, statutory and regulatory rights and privileges afforded to them without due process of law." (Doc. # 1 ¶ 47). In response to Defendant's Summary Judgment Motion, the entirety of Plaintiffs' due process argument is as follows:

> The 14th Amendment guarantees that no individual shall be deprived of life, liberty, or property without due process of law. *Allen v. Leis*, 2001 U.S. Dist. LEXIS 24382 (S.D. Ohio, 2001), *Young v. Vega*, 574 Fed. Appx. 684 (6th Cir. 2014). In the context of public education, this clause requires that public school districts provide procedural safeguards to protect the rights of students with disabilities. Disability discrimination by a public school district may constitute a denial of due process if it deprives a student of meaningful access to education without adequate justification. USCS Const. Amend. 14, *Sims v. Bd. of Educ.*, 2016 U.S. Dist. LEXIS 112173 (S.D. Ohio 2016).

(Doc. # 54 at 8-9). While Plaintiffs' due process claims are vague, the Court will nevertheless address the merits of both a procedural and substantive due process argument.

#### *i. Procedural Due Process*

Plaintiffs allege that Defendant violated their procedural due process rights. (Doc. # 1 ¶ 47). In its Motion for summary judgment, Defendant states that "[a]t no point were

---

[2] Because the Court dismissed the claims against Boone County Board of Education, Matthew Turner, and Jodi Hall, the only remaining Defendant is Boone County Public Schools.

Plaintiffs denied procedural due process, and, in fact, they actively engaged in all the due process rights that were afforded to them—specifically the initial due process complaint that was decided by the Hearing Officer, the ECAB appeal, and finally the appeal to this Court." (Doc. # 51 at 16).

> To make out a claim for a violation of procedural due process, the plaintiff has the burden of showing that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest.

*EJS Property, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

There is no dispute that Plaintiffs have a protected property interest pursuant to the Due Process Clause. *See H.C. v. Fleming Cty. Ky. Bd. of Educ.*, No. 5:16-cv-235-DCR, 2017 WL 4249546, at *10 (E.D. Ky. Sep. 25, 2017) ("The right to a public education is a property right protected by the Fourteenth Amendment." (citing *Laney v. Farley*, 501 F.3d 577, 580-81 (6th Cir. 2007))); *see also Doe v. Ohio*, No. 2:91-cv-464, 2004 WL 7347115, at *18 (S.D. Ohio, July 9, 2004) ("Plaintiffs . . . have a property right in a free, appropriate public education, secured by the IDEA[.]"). Although indirect, Plaintiffs seem to argue that Defendant deprived them of their protected right to a public education when it denied R.M. access to a FAPE under the IDEA. (*See* Doc. # 1 ¶¶ 5-6). Therefore, Plaintiffs must show that they were denied their protected property interest and Defendant did not afford them adequate procedural rights prior to depriving them of that interest. *See EJS Property, LLC,* 698 F.3d at 855. Plaintiffs have not done so.

The Hearing Officer at Plaintiffs' original due process hearing, the ECAB, and this Court all held that R.M. was not deprived of her right to a FAPE. (*See* Docs. # 12-2 at 219, 1-3 at 23, and 32 at 13). This Court opined in its original decision that the "evidence

9

supports the ECAB's ultimate decision that R.M. was provided a FAPE by the District." (Doc. # 32 at 13). Supporting this conclusion was the comprehensive and collaborative approach taken when crafting R.M.'s IEP, the failure of Plaintiff to show that St. Rita provides the least restrictive environment for R.M., no requirement under FAPE to provide an ASL rich environment, and the participation of R.M.'s parents when creating the IEP. (*Id.* at 7-13). This Court further acknowledged that failing to adhere to parent preference is not a breach of R.M.'s right to public education. (*Id*. at 7-8). The Court sees no reason, nor do Plaintiffs present any new arguments, that would warrant revision of this conclusion.

Additionally, even if Plaintiffs had established that they were deprived of a protected right, there is no question that the state afforded them adequate procedural rights. The record indicates that: (1) the IEP was created during numerous ARC meetings, where R.M.'s parents had the opportunity to voice their preferences; (2) numerous ARC meetings were held to discuss R.M.'s IEP; (3) when R.M. received a new diagnosis, another ARC meeting was held; (4) when R.M.'s parents asked the district for an increase in speech and safety services, the District accommodated the request; (5) R.M.'s parents participated in a seven-day evidentiary hearing before the state Hearing Officer; and (6) R.M.'s parents appealed the decision of the Hearing Officer, where it was reviewed and affirmed by a three-panel appeals board. (*See id*.). Plaintiffs' extensive participation throughout this process has been repeatedly acknowledged by this Court. (*See* Doc. # 32 at 12) ("Here, the record shows that R.M.'s parents were meaningfully involved in the IEP process because the District tried to address their requests and concerns to the extent it could while using its expertise to create the most effective IEP

10

for R.M."); (*Id*.) ("[T]he Court concludes that R.M.'s parents, through their own efforts and that of their advocate Ms. Felts, had meaningful participation in the ARC meetings and discussions regarding R.M.'s IEP . . . .").

In the Court's view, "Plaintiffs were given all that the Due Process Clause requires—notice and an opportunity to be heard." *Doe*, 2004 WL 7347115, at *19; *see also Fleming*, 2017 WL 4249546, at *4 (noting that parties are guaranteed a due process hearing before an impartial hearing officer, may appeal the due process hearing results to a state educational agency, and may challenge the educational agency's decision in district court.). Accordingly, there is no genuine issue of material fact as to Plaintiffs' procedural due process claim.

### ii. Substantive Due Process

Plaintiffs additionally allege a violation of their substantive due process rights. Defendant argues that "Plaintiff[s] ha[ve] not produced any evidence or even alleged that any school employee engaged in brutal or demeaning conduct which would shock the conscience." (Doc. # 51 at 17). Although Plaintiffs' Complaint is vague as to which substantive due process rights Plaintiffs were denied, the Court can infer Plaintiffs' perceived deprivation of a FAPE to be the gravamen of their substantive due process claim.

A violation of substantive due process refers to either a deprivation of a "particular constitutional guarantee" or "actions that 'shock the conscience.'" *Mansfield Apartment Owners Ass'n v. City of Mansfield*, 988 F.2d 1496, 1474 (6th Cir. 1993) (quoting *Braley v. City of Pontiac*, 906 F.2d 220, 224-25 (6th Cir. 1990)). The latter type of claim "does not 'require[] a claim that some specific guarantee of the Constitution apart from the due process clause be violated… This is a substantive due process right akin to the

11

'fundamental fairness' concept of procedural due process.'" *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir. 1985)).  Plaintiffs' claims are "premised on the alleged violation of a constitutionally protected liberty interest, within the meaning of the Fourteenth Amendment," thus falling into the latter category.  *Id*.

Plaintiffs' substantive due process argument relies on their perceived deprivation of a FAPE; however, this Court has repeatedly concluded that Defendant satisfied its obligations under the IDEA by providing R.M. with an adequate FAPE.  (See Doc. # 32 at 13) ("R.M. was provided a FAPE by the District.").  Plaintiffs have not presented the Court with any new arguments or issues of fact that would warrant revisiting this conclusion.  Accordingly, Defendant could not have violated Plaintiffs' substantive due process rights for failure to provide a FAPE because they did, in fact, provide R.M. with an adequate FAPE.  While the Court understands that R.M.'s parents may desire more, Defendant "fulfilled its legal obligation" to Plaintiffs.  *See Kenton Cnty. Sch. Dist. v. Hunt*, 384 F.3d 269, 280 (6th Cir. 2004).  Therefore, Defendant's Motion for Summary Judgment as to Count VII(B) of Plaintiffs' Complaint is **granted**.

### b.  Disability discrimination claim (Count VII(C))

Plaintiffs additionally claim that Defendant excluded R.M. "from full participation in and access to the public education enjoyed by her non-disabled peers" on the basis of her disability in violation of 29 U.S.C. § 794 and 42 U.S.C. § 12132.  (Doc. # 1 ¶¶ 52-53). In its Motion for Summary Judgment, Defendant argues that "Plaintiffs have not pointed to a genuinely disputed issue of material fact to establish that R.M. suffered education exclusion or deprivation of any kind."  (Doc. # 51 at 18).  Specifically, Defendant argues that "[t]he gravamen of Plaintiffs' theory underlying the ADA claim" is that the District failed

to appropriately consider R.M.'s needs, and that Plaintiffs have produced "no evidence . . . to support this theory." (*Id.*). Plaintiffs' Response to this argument is again underdeveloped. Plaintiffs spend much of their argument restating relevant standards, while making various passing references towards what accommodations a hearing-impaired student is entitled to receive. (*See* Doc. # 54 at 7-9). Plaintiffs' basic recitation of the pertinent standard does nothing to provide this Court with any support. Regardless, the Court will address the merits of a discrimination claim under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act.

Title II of the ADA "prohibits public entities, including public schools, from discriminating against disabled individuals or excluding them from participation in or denying them the benefits of the public entity's services, programs, or activities on account of that disability." *M.G. by and through C.G. v. Williamson Cnty. Schs.*, 720 F. App'x 280, 287 (6th Cir. 2018) (citing 42 U.S.C. § 12132). Section 504 of the Rehabilitation Act likewise provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "Claims brought under the ADA and Section 504 generally are evaluated together." *Williamson Cnty. Schs.*, 720 F. App'x at 287; *see also Thomspon v. Williamson Cnty.*, 219 F.3d 555, 557 n. 3 (6th Cir. 2000) (noting that an ADA and § 504 claim may be analyzed simultaneously because the statutes provide "the same remedies, procedures, and rights[.]"). Accordingly, to establish a claim under either the ADA or § 504, a plaintiff must show that they (1) have a disability; (2) are otherwise qualified for participation in

13

the program; and (3) were being excluded from participation in, denied the benefits of, or subjected to discrimination under the program because of their disability. *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (internal citations omitted). The only factor in dispute here is factor three—whether R.M. was excluded from participation in, denied the benefits of, or subjected to discrimination because of her disability.

Under both the ADA and Section 504, "a showing of discrimination requires evidence of something more than a school district's failure to provide a FAPE." *Knox Cnty. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023). A plaintiff may allege disability discrimination under two available theories: intentional discrimination and failure to reasonably accommodate. *Id*. While Plaintiffs fail to elaborate on which theory they pursue, the Court can assume from the record that Plaintiffs assert that Defendant failed to reasonably accommodate for R.M. by refusing to educate R.M. exclusively through ASL. (*See* Doc. # 54 at 8) ("Under the ADA, a hearing-impaired student is entitled to accommodations that remove barriers to access, such as the provision of auxiliary aids and services, unless the school district can demonstrate that such accommodations would impose an undue hardship." (citing *Bronski v. Northwest Airlines, Inc.*, 2003 U.S. Dist. LEXIS 12032 (W.D. Tenn. 2003) and *Johnson v. Wash Cnty. Career Ctr.*, 470 Fed. App'x 433 (6th Cir. 2012))).

"To prevail in a failure-to-accommodate claim, the plaintiff must show that the defendant reasonably could have accommodated his disability but refused to do so." *Knox*, 62 F.4th at 1000 (quoting *Keller v. Chippewa Cnty., Mich. Bd. of Comm'rs*, 860 F. App'x 381, 385 (6th Cir. 2021)). That failure must "imped[e] [the student's] ability to participate in, or benefit from, the subject program[.]" *Id*. (citing *Campbell v. Bd. of Educ.*

14

of Centerline Sch. Dist., 58 F. App'x 162, 166 (6th Cir. 2003)).  Here, Plaintiffs state that "auxiliary aids and services, such as sign language interpreters, are explicitly recognized as reasonable accommodations under the ADA" and are to be "furnished where necessary to ensure effective communication." (Doc. # 54 at 8) (citations omitted).  To the best the Court can discern, Plaintiffs argue that Defendant failed to reasonably accommodate R.M. when it refused to educate R.M. only through ASL, thereby discriminating against her on the basis of her disability.  This argument is not supported by the record.

Here, Defendant reasonably accommodated R.M.'s disability and satisfied its requirements under the IDEA and ADA.  Defendant provided a FAPE that included an IEP tailored to R.M.'s specific needs.  (Doc. # 32 at 8) ("R.M.'s IEP was [] carefully developed with the input of multiple education experts at the District and was updated as R.M. made progress.").  Numerous meetings were held in which experts opined as to the best course of action for R.M.'s education, in conjunction with R.M.'s parents and their parent-advocate Ms. Felts.  (Id. at 13) ("[T]he summary report from the final May 17, 2021 ARC meeting shows extensive participation by both R.M.'s mother and Ms. Felts" (citing Doc. # 12-2 at 341-353)).  R.M. was placed in a classroom with a teacher who knew ASL, was assigned an aide proficient in ASL, and was given other tools to assist in her learning.  (See Doc. # 1-3 at 17) ("The IEP provided for attendance at [R.M.'s school] where student would receive instruction from a Special Education teacher who had an extensive background in sign language, and with the services of an instructional aide proficient in American Sign Language.")  As this Court previously opined, despite Plaintiffs' argument that R.M. required an ASL rich environment, Defendant's "total communication

methodology" was helping R.M. develop peer relationships and was not a violation of FAPE. (Doc. # 32 at 11). In fact, "R.M.'s IEP not only 'aim[ed] to enable [her] to make progress,' but actually did result in such progress as reported by the District." (*Id*. at 8) (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist., RE-1*, 580 U.S. 386, 399 (2017)).[3]

While Plaintiffs may argue that there remains an issue of material fact that R.M. is entitled to an ASL rich environment, time after time the record supports the opposite conclusion. The evidence leaves no room to misinterpret Defendant's commitment to accommodate R.M. That Defendant did not pursue instruction *solely* in ASL simply does not satisfy the standard necessary to succeed on an ADA or § 504 claim. Therefore, Defendant's Motion for Summary Judgment as to Count VII(C) of Plaintiffs' Complaint is **granted**.

### IV.  CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)   Defendants' Motion for Summary Judgment (Doc. # 51) is **GRANTED**;

(2)   This matter is **STRICKEN** from the Court's docket;

(3)   A **Judgment** in favor of **Defendants** will be filed contemporaneously.

This 8th day of December, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

---

[3] Such progress would support a conclusion that even if the Court had found a failure to accommodate, such failure did not imped R.M.'s ability to participate in or benefit from her education.